**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **RAYMOND A. MILLER,** | ) | **CASE NO. 1:20 CV 1735** |
| **Plaintiff,** | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| **SERGEANT BILTZ, et. al.,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **Defendants.** | ) | **AND ORDER** |

### I. Introduction

*Pro se* Plaintiff Raymond A. Miller ("Miller" or "Plaintiff"), an Ohio inmate presently incarcerated at Northeast Ohio Correctional Center ("NEOCC"), has filed this civil rights action under 42 U.S.C. § 1983 against Sergeant Biltz; Unit Manager, Ms. K. Butch; Lieutenant Thrasher; Lieutenant Bland; Captain Lloyd; Assistant Warden Miller; Investigator, Ms. Henry; Chief Legal Counsel, Vencot Brown; and fellow inmate, Logan Pocock.

Miller's action pertains to a Rules Infraction Board ("RIB") decision finding him guilty of soliciting inmates for drug transactions and offering inmates a means to sell and distribute drugs, which resulted in 20 days in restrictive housing, a security review, removal from a mentorship program, and transfer out of Lorain Correctional Institution ("LCI"). Plaintiff has

been granted leave to proceed *in forma pauperis* by separate order. For the following reasons, Plaintiff's action is dismissed.

## II. Background

The record shows that on February 4, 2020, Lieutenant Thrasher completed a conduct report, alleging Miller violated Rule 45, "dealing, conducting, facilitating, or participating in any transaction . . . within an institution, or involving an inmate, staff member, or another for which payment of any kind is made, promised or expected"; Rule 56, "use of telephone or mail in furtherance of any criminal activity"; Rule 60, "attempting to commit, aiding another in the commission of, soliciting another to commit, or entering into an agreement with another to commit any of the above acts"; and Rule 61, "any violation of any published institutional rules, regulations, or procedures."

The conduct report indicated that Unit Manager Butch reported that several inmates had requested moves out of "7A" because they were in fear of their safety because they were being "intimated and extorted" by Miller. According to the report, field interviews were conducted and all individuals made similar statements, stating that Miller approached them and offered to "cut them in on a deal in which their visitor would bring in narcotics and tobacco during a visit, which he would then distribute/sell throughout the institution, sharing the profits." Miller was identified as the inmate in 7A who was pressuring them to set up a conveyance using a Cash App to conduct the transactions. The report identified two Cash Apps that were reportedly used. The report noted that "both inmates confirmed conversations with Miller who stated to them [that] if they bring him the drugs, he will facilitate distributing and collecting money." The inmates requested "pod moves" after Miller "refused to take no for an answer, causing both to fear for their safety." The report indicated that the alleged offenses occurred on January 21, 2020, at

12:30 p.m.

The conduct report was signed by Lieutenant Thrasher. The space indicating that a "copy of this conduct report was served upon the above-named inmate" was blank. And there is no signature where the inmate would "acknowledge receipt of the conduct report."

Miller alleges that on the morning of February 4, 2020, he was called into Sergeant Biltz's office and informed that there is a conduct report on him. Miller signed for it and asked that the sergeant read the report to him and issue him a copy. According to Miller, Sergeant Biltz told him to wait because he believed a charge was being dropped. Miller states that he was called back into the sergeant's office approximately fifteen minutes later where, upon being asked, Miller informed Sergeant Biltz that he wanted witnesses present at the hearing, including inmate Pocock and the reporting officer. When Miller asked again for the conduct report to be read to him and for a copy of the report, Sergeant Biltz told Miller once again to wait because changes were being made. Miller alleges that Sergeant Biltz left, and while Miller was waiting for the conduct report, the block officer came to him and advised him to pack up for segregation.

Miller was moved to the restrictive housing unit on February 4, and the matter was referred to the RIB. On February 11, the RIB conducted a hearing on Miller's charges. The board considered Lieutenant Thrasher's conduct report and confidential informants' statements. Miller stated that he advised the panel chairperson, Captain Lloyd, that he did not receive a copy of the conduct report and did not know with what offense he was being charged. Captain Floyd then read the conduct report and gave Miller a copy. Miller questioned the panel's purported evidence, including the investigation into the Cash Apps and the alleged informants' statements. Miller asserted that the investigation, purportedly conducted by Lieutenants Thrasher and Bland, was a "sham" and the Cash Apps are fake. Miller claimed that the panel denied his right to a

-3-

witness. Miller also claimed that he requested the presence of the charging officer but the officer did not attend the hearing.

The RIB found Miller guilty of violating Rules 45, 60, and 61, and not guilty of violating Rule 56. As a result, Miller was ordered to serve 20 days in the restrictive housing unit, he received a security review, he was removed from the mentorship program, and he was transferred out of LCI. The warden affirmed the RIB's decision, finding factual evidence to support the charges, finding no procedural violations, and finding the penalty authorized and appropriate.

On March 5, 2020, Miller appealed the RIB's decision, reiterating that he did not receive an advanced copy of the conduct report, did not have adequate time to prepare a defense, and was not permitted witnesses. Miller also disputed the evidence, stating that the informants were not credible and the investigation into the Cash Apps was a "sham." On March 31, 2020, Chief Legal Counsel, Vencot Brown, affirmed the RIB's decision, in part. Brown stated that he had no evidence to conclude that the individuals involved with the investigation were not credible. Brown stated, however, that Miller cannot commit the offense and conspire to commit the same offense, and therefore, he is not guilty of Rule 60. But Brown upheld the sanctions, finding them appropriate.

Miller also filed an "informal complaint" or grievance. Miller again alleged that Sergeant Biltz did not give him a copy of his conduct report, the investigation conducted by Lieutenants Thrasher and Bland was a "sham," the Unit Manager lied on the conduct report, the informant lied, he was not permitted witnesses at the hearing, and he was not afforded time to present a defense. His grievance was denied.

Miller then filed this complaint, alleging that Defendants' actions violated his due

-4-

process. Miller's requested relief includes "an honest investigation," an order from the court requiring state officials to remove the conduct report from his record, his security level to be lowered, his mentorship job back, the involved inmates to be punished, and damages for the cost of filing the action.

### III. Standard of Review

*Pro se* pleadings are liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Federal district courts, however, are expressly required under 28 U.S.C. § 1915(e)(2) to screen all *in forma pauperis* actions and to dismiss before service any such action that the Court determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

To survive scrutiny under 28 U.S.C. § 1915(e)(2)(B), a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (holding that the Fed. R. Civ. P. 12(b)(6) dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals under § 1915(e)(2)(B)). The factual allegations in the pleading "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

When reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citing *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996)). That said, the courts are not required to conjure unpleaded facts or construct claims against defendants on

behalf of a pro se plaintiff. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

### IV. Discussion

Miller brings this claim under 42 U.S.C. § 1983. To state a claim under § 1983, the plaintiff must show that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Gomez v. Toledo,* 446 U.S. 635, 640 (1980) (citation omitted).

Miller contends that Defendants violated his due process rights pertaining to a disciplinary action. "The Fourteenth Amendment protects an individual from deprivation of life, liberty, or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). Courts' analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State," and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." (Citations omitted.) *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989). Miller's claim fails at the first step.

A prison disciplinary action does not give rise to a constitutionally protected liberty interest triggering constitutional due process protections unless the discipline imposed results in a withdrawal of good time credits or constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Miller does not claim that he lost good time credits,

nor does the record indicate that he has lost good time credit. And in reviewing the disciplinary proceeding, we find that Miller has not demonstrated his discipline for the alleged rules violation resulted in an "aytpical and significant hardship."

As a result of his violations, Miller's security level was increased, he served 20 days in restrictive housing, he was removed from the mentorship program, and he was transferred to NEOCC. The Sixth Circuit has expressly held that a sentence imposed on a prisoner stemming from an RIB disciplinary conviction and resulting in an increase in an inmate's security classification, or transfer to a less desirable facility, does not constitute "atypical and significant hardship" that infringes on due process rights "because heightened security status is one of the ordinary incidents of prison life" and it does not "inevitably affect the duration of [the prisoner's] sentence." *Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001); *Briscoe v. Mohr*, No. 19-3306, 2020 U.S. App. LEXIS 8343, * 4 (6th Cir. Mar. 16, 2020).

This analysis applies equally to a prisoner's transfer to segregated, or restrictive, housing. Generally, unless placement in disciplinary confinement is for a significant period of time that presents an unusual hardship on the inmate, there is no constitutionally-protected interest to remain free of disciplinary confinement. *Sandin*, 515 U.S. at 486-487 (finding temporary disciplinary confinement for 30 days "within the range of confinement normally expected for one serving an indeterminate term of 30 years to life"); *Jones v. McKinney*, No. 97-6424, 1998 U.S. App. LEXIS 32665, *4 (6th Cir. Dec. 23, 1998) (finding no constitutionally protected interest in remaining free of 10 days disciplinary segregation). And here, Miller presents no argument that his confinement to 20 days in the restrictive housing unit was for an inordinate amount of time that resulted in an atypical hardship.

Additionally, Miller cannot establish a constitutionally protected interest in his

-7-

involvement in LCI's mentorship program. Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976); (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education, or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment as an "inmate advisor"); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (no constitutional right to a particular job or to any job). Miller therefore has no liberty interest in his participation in the prison mentorship program.

Finally, to the extent Miller argues that the disciplinary charges were false, "a prisoner has no constitutionally protected immunity from being wrongly accused." *Jones,* No. 97-6424, 1998 U.S. App. LEXIS 32665, at *3; *Mujihad v. Harrison*, No. 97-6366, 1998 U.S. App. LEXIS 32666, *4 (6th Cir. Dec. 23, 1998) ("the filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable pursuant to § 1983"). *See also Reeves v. Mohr*, No. 4:11 CV 2062, 2012 U.S. Dist. LEXIS 11374, *2 (N. D. Ohio Jan. 31, 2012) (finding no plausible due process claim where a prisoner alleged he was charged with a conduct violation as a result of false allegations by another inmate and was found guilty of the charges on the basis of fabricated polygraph tests).

## V. Conclusion

For these reasons, Plaintiff's complaint fails to allege any plausible constitutional claim on which relief may be granted under § 1983, and his complaint is therefore dismissed pursuant

to 28 U.S.C. § 1915(e)(2)(B). Because the court finds no colorable constitutional claim, it is not necessary to address Plaintiff's claim as it relates to the various defendants.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision may not be taken in good faith.

**IT IS SO ORDERED**.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: November 6, 2020